YORK BEACH VILLAGE CORPORATION
*vs.*
INHABITANTS OF THE TOWN OF YORK

York. Opinion, February 3, 1954.

See R. S., 1944, Chap. 19, Sec. 45.

*Myron D. Rust,*
*Chaplin, Burkett & Knudsen,* for plaintiff.

*James S. Erwin,*
*Sanborn & Sanborn,*
*Ralph W. Hawkes,* for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, WEBBER, JJ. TIRRELL, J. did not sit.

WILLIAMSON, J. On report upon an agreed statement of facts. This is an action upon an account annexed by the York Beach Village Corporation (the Village) against the Inhabitants of the Town of York (the Town) to recover the balance allegedly due from the Town on or before July 1, 1952 under the provisions of the charter of the Village (P. & S. L., 1923, Chap. 3, Sec. 4) and the statute relating to apportionment of the motor vehicle excise tax (R. S., Chap. 19, Sec. 45).

The Village contends there is due from the town the sum of $47,127.51, less a payment of $23,492.92, or a balance, apart from interest, of $23,634.59. The Town pleads the general issue and in a brief statement of special matter of defense sets forth accord and satisfaction and payment of the full amount due.

The facts are not in dispute. The controversy centers primarily around the construction of section 4 of the Village charter. Before proceeding to this issue we will dis-

pose of the Town's contention that the claim has been settled by the payment from the Town to the Village.

On March 3, 1952 the Town at its annual meeting voted to pay the Village the sum of $23,492.92 pursuant to an article in the warrant "to see if the Town will vote to appropriate the sum of $44,430.06" in compliance with the Village charter.

The sum of $44,430.06 was the amount claimed by the Village. The amount appropriated was recommended by the selectmen "and was an amount larger than the amount claimed by said selectmen to be due to said Village Corporation under said section; said figure of $23,492.92 being arrived at by the selectmen resolving all doubts in favor of the Village Corporation, as they understood its charter, so far as individual items in the town appropriation were concerned, in order to grant the Village Corporation as much funds as possible for carrying out its duties under its charter, and said amount being intended by said selectmen and Town to be the full obligation of the Town to said Village Corporation for said year." On March 18, 1952 at the annual meeting of the Village it was voted to authorize the board of assessors to institute legal proceedings to secure an interpretation and clarification of the charter, and enforcement of the rights of the Village.

The Town paid the treasurer of the Village $23,492.92 by check dated June 14, 1952, with the notation on its face "for Beach-Village Corp. appropriation 1952 in full for year 1952." The check was cashed and "used and expended unconditionally by said Village Corporation assessors, knowing that said payment was sent by the Town as payment in full for its appropriation for the year 1952, for the benefit of said plaintiff corporation and the conduct of its affairs for the year 1952."

In our view the Village accepted the sum appropriated by the Town without losing any claim to further payment by reason either of the notation on the check or of the knowledge of the assessors of the intent of the Town in making the payment. The money paid to the Village represented the tax revenue of the Village as determined by the Town meeting. Without this revenue, the treasury of the Village would have no current income with which to meet its municipal expenses. We hold the Town could not place a condition of "payment in full" upon the payment of the sum appropriated and paid pursuant to the statute. There must of necessity be authority at some point for at least reasonable adjustments under the statutes before us. Whatever, however, may be the authority of assessors of the Village, or of the Village Corporation itself to compromise and settle the liability under the statutes of the Town to the Village, we find here no action by such authority. See *Frankfort* v. *Waldo Lumber Co.*, 128 Me. 1, 145 A. 241.

We come then to the decisive issue of how and in what manner is the amount payable by the Town to the Village to be determined under the charter and the motor vehicle excise tax statute.

The pertinent parts of the statutes are:

**The Village charter**

"Sec. 4. Amount to be paid to corporation by town of York increased to 75%. On or before the first day of July annually, beginning in nineteen hundred seventeen, the town of York shall appropriate and pay over to the York Beach Village Corporation a sum of money computed as follows: From the annual appropriation raised by the town taxation on the estates and polls within said York Beach Village Corporation for the preceding year shall be deducted said corporation's proportional part, based on valuation and poll tax assessment of the whole annual town levy for said preceding

year for state, county and school taxes, salary of the town officers, reduction of town debt, interest on town charges, appropriations for roads, poor, incidentals, and any and all other town charges, and seventy-five per centum of the sum thus determined, after deducting the corporation's proportion of town obligations for hydrants and street lights, shall be said sum to be annually paid over to said corporation as herein provided. Said sum shall be expended by said corporation for its corporate purposes and duties, and payment thereof to the corporation shall relieve said town of all town charges within said corporation except for street lighting, hydrant service, public schools, public health, maintenance of poor, and such new construction of drains and sewers as the town may vote to build, and repair of town sewers. All the authority and duties of the selectmen or road commissioner within said corporation shall be exercised by said assessors; or they may appoint an agent to perform the duties of road commissioner."
**P. & S. L., 1923, Chap. 3.**

**Motor vehicle excise tax** (including aircraft)

"All moneys collected in accordance with the provisions of Sections 38 to 47, inclusive, (motor vehicle excise tax) shall be apportioned between such town, city, and any village corporation, sewer district, fire district, or other public municipal corporation, in the same manner as the moneys now collected for taxes assessed on property located within such town or city. In case the manner of apportionment between any public municipal corporations has not been otherwise determined, it shall be made by the assessors of such city or town for any year and the assessors of the other public municipal corporation concerned in such apportionment for that year."

**R. S., Chap. 19, Sec. 45.**

It is not necessary to discuss in detail the Village Corporation. It is a corporation of a type not unfamiliar in our State, designed to perform certain specified functions with-

in a municipality and deriving its support from an apportionment or division of the tax collections. It was originally chartered in 1901. In 1917 its duties and functions were greatly increased. The present formula in Section 4 was first introduced in 1917, and has since remained unchanged, except for an alteration in percentage from 55% to 75%. *P. & S. L., 1901, Chap. 455; 1905, Chap. 305; 1917, Chap. 129; 1923, Chap. 3; 1939, Chap. 16 and 17.*

We are concerned, it will be noted, not with the apportionment of tax dollars collected in 1952. Our problem is to ascertain by application of a formula to tax dollars and levy or expenses for the year 1951, the sum which in 1952 was payable by the Town to the Village for the latter's particular municipal purposes. In other words, the Village operates not upon tax dollars raised in 1952 but upon dollars paid by the Town based on 1951 figures. Of course in the final analysis the dollars are tax dollars, and whether we are dividing this year's tax collections or paying a sum based on last year's figures is not of consequence in arriving at a solution.

Agreed figures from 1951 for use in whatever formula may be adopted include:

Assessed valuation of the estates—real and personal property—

| | | |
|---|---|---|
| | Town | $4,459,266.00 |
| | Village | 1,384,281.00 |
| taxable polls — | Town | 1,003 |
| | Village | 211 |
| excise tax — | Town | $ 23,001.42 |
| | Village | 4,456.63 |
| tax rate — | | 68 mills |
| poll tax — | | $ 3.00 |
| Village proportion — hydrants | | $ 2,340.00 |
| — street lights | | 2,310.88 |

We now seek to ascertain and apply the formula set forth in Section 4 of the charter. (1) The Town shall appropriate and pay over to the Village "a sum of money computed as follows." (2) "From the annual appropriation raised by the town taxation on the estates and polls" within the Village "for the preceding year." Both Town and Village agree the amount is .068 x $1,384,281 + 211 x $3 = $94,764.11. There is a further factor — the excise tax — to be considered at this stage.

In 1929 (Laws 1929, Chap. 305) the Legislature substituted an excise tax for the customary property tax on motor vehicles. It was necessary to provide for division of this new source of revenue among the governmental units losing the property tax. The statute requires apportionment "in the same manner as the moneys now collected for taxes assessed on property located within such town or city." Thus in the instant case the apportionment is covered by Section 4 of the Village charter. Strictly the tax money for 1951 for example is not apportioned. The tax figures of 1951 with other data are used in computing a sum payable in 1952 by the Town to the Village from 1952 tax revenues. In substance, however, the payment to the Village results from an apportionment or division of tax moneys and we so consider it.

The Legislature intended, as we read the statutes, that the excise tax should be added to the property and poll taxes of both Town and Village in reaching the amount due the Town. Accordingly, we add the Village excise tax of $4,456 to the Village property and poll taxes of $94,764, making a total Village tax (or in terms of the charter "annual appropriation") of $99,220. (3) The Village's "proportional part, based on valuation and poll tax assessment."

We conclude that 30% is the "proportional part" of the Village. Both Town and Village agree on 31%. The dif-

ference comes from inclusion of the excise tax in computing the "proportional part." The various methods follow:

| Plan | Town | Village |
|---|---|---|
| **Town**—valuation | $4,459,266 | $1,384,281 |
| poll tax | 3,009 | 633 |
| Total | $4,462,275 | $1,384,914 |
| proportional part | 100% | 31% |
| | | |
| **Village**—property tax | $ 303,227 | $ 94,131 |
| poll tax | 3,009 | 633 |
| Total | $ 306,236 | $ 94,764 |
| proportional part | 100% | 31% |

The Village more properly includes the property tax assessment in place of the assessed valuation.

| | | |
|---|---|---|
| **Court**—property tax | $303,227 | $94,131 |
| poll tax | 3,009 | 633 |
| excise tax | 23,001 | 4,456 |
| Total | $329,237 | $99,220 |
| proportional part | 100% | 30% |

In treating the excise tax in this manner, we have, in our view, satisfactorily met the requirement of apportionment "in the same manner as the moneys now collected for taxes assessed on property. . ." Both the Town and the Village compute the payment to the Village from the excise tax apart from the payment from property and poll taxes. Under the Village theory $2,692, or 60% of the Village excise tax is returned to the Village. The Town on its part contends that $1,150, or 5% of the Town excise tax is the correct amount. The basis of each theory later appears in a comparative tabulation of the Town and Village proposals and the plan approved by the court. (4) "shall be deducted"

the Village's "proportional part" . . . "of the whole annual town levy for said preceding year for state, county and school taxes," and other items listed.

Here we find the basic conflict between the Town and the Village, setting aside for the moment all questions relating to the excise tax.

The amount to be deducted is, on the Village theory, the "proportional part" of the Village property and poll taxes, and on the Town theory, the "proportional part" of the "state, county and school taxes" and other listed items.

In figures the results are:

Village — 31% x $ 97,764 or $29,320

Town — 31% x $214,000 or $66,515 . ..

The Town correctly seeks the "proportional part" of the expenses listed in the charter. It is understandable and surely reasonable that the Village pay its full share of the state, county and school taxes. Without going further we see that these are items of expense common to both Town and Village and are to be shared proportionately between the Town and the Village. There are, however, in the list of the Town appropriations which make the sum of $306,-236, certain expenses not common to both Village and Town and not within the list in Section 4.

The Legislature sought to provide that the Village pay its *share* of the listed expenses, and that from the balance of the amount raised the Town return 75% to the Village for its particular purposes, with adjustment for hydrants and street lights. The Legislature considered the expenses of the Village in three classifications: (1) the expenses listed and common in nature to Town and Village, (2) hydrant and street lights, and (3) particular uses of the Village. It is plain that the share of the Village in the non-common expense differs, for example, from its "proportional part" of the school expense.

To what expense does the "proportional part" apply? The Town reaches a total of $214,566.89 from the following:

| | |
|---|---|
| State tax | $32,475.65 |
| County tax | 8,883.75 |
| School tax | 102,392.92 |
| Officer's salaries | 11,500.00 |
| Debt reduction and interest | 5,000.00 |
| Road | 34,189.57 |
| Poor | 10,000.00 |
| Incidental | 5,800.00 |
| All other town charges: health, York Hospital, Public Health, Misc. | 4,325.00 |
| | $214,566.89 |

The Town places the amount of the deduction at 31% of $214,566.89, or $66,515 against the Village's figure of $29,320.

The Town would deduct the "proportional part" of the listed or common Town expenses; the Village would deduct the "proportional part" of the taxes assessed. It is this difference in principle that raises the important question in the case.

The items of expense listed by the Town are, in our view, within the types of levy or expense set forth in Section 4 of the charter. We do not indicate that other items could not properly have been added thereto, thus increasing the "common expense" total. For example, it does not appear why the library appropriation of $2200 should not have been borne proportionately by Town and Village. Our task is not, however, to determine whether each item of Town expense in 1951 fell within or without the expenses listed in Section 4. For our purposes it is sufficient to say that the items set forth are properly included in the base for application of the "proportional part" rule.

Referring again to the Village theory, it appears that 31% of the state, county and school tax alone would amount

to .31 x $143,750, or approximately $44,500, or $15,000 more than the total proportional share of $29,320 computed by the Village.

Obviously the less the "proportional part" to be deducted from the Village taxes, the greater will be the amount retained by the Town under the 25%-75% division of the balance. We do not consider, however, that the Legislature intended to make the retention of the fair share of the common or listed expenses dependent upon the operation of a 25%-75% division of a balance remaining after deduction of an amount plainly insufficient to meet the proper share of the Village.

There are no problems in completing the computations and in deducting the agreed amounts for street lights and hydrants.

In the attached schedule we compare the Town and Village proposals with the plan approved by the court. Percentages and figures throughout the opinion are approximate. Differences arising from more complete computations would not alter the result.

Under the plan outlined for finding the amount to be paid the Village by the Town, the Village will share, as it should, in the expenses set forth in the charter, and it will be relieved of contributing to the remaining Town expense in part and to this extent will acquire funds for its own purposes.

It appears that there is no balance due the Village from the Town. The Village has failed to establish a case.

*Judgment for defendant.*

## SCHEDULE

| | TOWN Property and poll taxes | VILLAGE Property and poll taxes | Excise tax | COURT Property, poll and excise tax |
|---|---|---|---|---|
| (1) Village taxes | $94,764 | $94,764 | $ 4,456 | $99,220 |
| (2) less "proportional part" of expenses | | | | |
| Town—31% x $214,566 | 66,515 | | | |
| Village—31% x $94,764 | | $29,320 | 864 (Note 1) | |
| Court—30% x $214,566 | | | | 64,369 |
| (3) Balance | $28,249 | $65,444 | $ 3,592 | $34,851 |
| (4) 75% of line 3 | $21,186 | $49,083 | $ 2,694 | $26,138 |
| (5) less hydrants $2,340 lights $2,310 | 4,650 | 4,650 | | 4,650 |
| (6) due Village | $16,536 | $44,433 | | $21,488 |
| (7) excise tax due Village | 1,150 (Note 2) | 2,694 | | — |
| (8) total due Village | $17,686 | $47,127 | | $21,488 |
| (9) paid by Town to Village | 23,492 | 23,492 | | 23,492 |
| (10) Balance due Village | None | $23,635 | | None |

NOTE 1: Total Town excise tax 100% $23,001
 Village excise tax (19.4%) 4,456
 19.4% x $4,456 = $ 864

NOTE 2: Total Town property and
 poll tax 100% $306,239
 Returned to Village 5% 16,536
 5% x $23,001 (excise tax) = 1,150